JOHN K. AND PATRICIA A. MOONEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mooney v. Commissioner
Docket No. 11932-91
United States Tax Court
T.C. Memo 1993-204; 1993 Tax Ct. Memo LEXIS 210; 65 T.C.M. (CCH) 2610; May 13, 1993, Filed *210 For petitioners: John K. Mooney. For respondent: Lin Murphy. GUSSIS
GUSSIS
MEMORANDUM OPINION GUSSIS, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal Income Tax for 1988 in the amount of $ 1,321.96. The issues for decision are: (1) Whether petitioners are liable for self-employment tax under section 1401 on self-employment income of $ 22,231.67, and (2) whether petitioners are entitled to carry forward net operating losses incurred in 1984 and 1985. Some of the facts have been stipulated and they are so found. Petitioners resided in Redwood City, California, at the time the petition herein was filed. Petitioners filed a joint Federal income tax return for 1988. On Schedule C of their return petitioners reported a net profit of $ 22,231.67 from petitioner John Mooney's sole proprietorship, Elan Energy Systems. On Schedule E of their return petitioners reported a net rental loss of *211 $ 28,201.52. Petitioners used the Schedule E loss to offset the Schedule C profit thereby reporting no self-employment income subject to self-employment tax. Respondent disallowed petitioners' offset and determined that petitioner earned $ 22,231.67 in self employment income subject to self-employment tax. Petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 1401 imposes a tax on the self-employment income of every individual. Generally, self-employment income means "the net earnings from self-employment derived by an individual * * * during any taxable year". Sec. 1402(b). The term "net earnings from self-employment" is defined as "gross income derived by an individual from any trade or business carried on by such individual less the deductions allowed by this subtitle which are attributable to such trade or business". Sec. 1402(a). Generally, a taxpayer engaged in more than one trade or business may aggregate the net income and losses of all such trades or businesses in arriving at net self-employment income. Sec. 1.1402(a)-2(c), Income Tax Regs. *212 Section 1402(a)(1), however, excludes from the calculation of self-employment income "Rentals from real estate and from personal property leased with the real estate * * * [with] the deductions attributable thereto, unless such rentals are received * * * in the course of a trade or business as a real estate dealer". Sec. 1.1402(a)-4, Income Tax Regs.
Petitioner has stipulated that he was not in the trade or business of a real estate dealer in 1988. He nonetheless argues that he may offset his Schedule C income with his Schedule E losses because he actively participated in the Schedule E business. Petitioner's argument is misdirected. Unless rentals are received in the course of a taxpayer's trade or business as a real estate dealer, rentals from real estate and the deductions attributable thereto are excluded from the computation of net earnings from self employment. Hyde v. Commissioner, T.C. Memo. 1992-419; Norris v. Commissioner, T.C. Memo. 1991-648; see also Hopper v. Commissioner, 94 T.C. 542 (1990). Petitioner's degree of participation in the Schedule E business is therefore *213 irrelevant. There is no indication that petitioner was involved in a crop-sharing arrangement as contemplated by section 1402(a)(1). Since petitioner was not a real estate dealer in 1988, petitioner's Schedule E income may not be used to offset his Schedule C income. Petitioner also asserts that he relied on an Internal Revenue Service (IRS) instruction booklet in offsetting his Schedule C income with his Schedule E losses. Instructions and other IRS publications are not authoritative sources of law in the tax field. Casa De La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990). Taxpayers must look to authoritative sources such as the statutes, regulations, judicial decisions. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Here the statute clearly provides that petitioner may not use his Schedule E losses to offset his Schedule C income. Consequently, petitioners are liable for self-employment tax on the $ 22,231.67 of self-employment income earned by petitioner in 1988. Respondent is sustained. In his First Amended *214 Petition filed with the Court on February 13, 1992, petitioner alleges that they elected to carry forward to 1988 certain net operating losses (NOL) sustained in 1984 and 1985, offsetting petitioner's self-employment income from his sole proprietorship. We cannot agree with petitioner. It is clear that the term "net earnings from employment" in the statute excludes net operating losses sustained in years other than the taxable years. Secs. 172 and 1402(a)(4); sec. 1.1402(a)-7, Income Tax Regs. In any event, petitioner would not be entitled to any net operating loss deduction in 1988 attributable to a carryforward of 1984 and 1985 net operating losses. Generally, a net operating loss is carried back to the third tax year preceding the loss, then carried forward for a period of 15 years. The income of intervening years reduces the available net operating loss. A taxpayer may elect to relinquish the NOL carryback period provided in section 172(b)(1)(A) and instead carry forward the losses. Sec. 172(b)(3)(C). Such an election must be made by the due date (including extension of time) for filing the taxpayer's return for the taxable year of the NOL for which the election is to *215 be in effect. An election once made for any taxable year, is irrevocable for that taxable year. The election must be made by a statement attached to the return (or amended return) for the taxable year in which the NOL is incurred, indicating the section under which the election is being made and setting forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election. Sec. 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1469 (Jan. 7, 1977). Respondent concedes that petitioner has incurred NOL's for 1984 and 1985, in the amounts of $ 3,549 and $ 18,108, respectively. However, respondent maintains that petitioner did not elect to relinquish the carryback periods and therefore the NOL's were consumed prior to 1988. Alternatively, respondent argues that even if petitioner did elect to relinquish the carryback periods, the NOL's would still have been consumed prior to 1988. The copy of petitioner's 1984 Federal income tax return filed with the IRS has been destroyed. Respondent, however, did retrieve petitioner's 1985 return. The 1985 return filed with respondent gives no indication *216 that petitioner elected to forgo the carryback period. Respondent has no record that the statement required by the temporary regulations was filed with the 1985 return. A copy of petitioner's 1984 return, provided by petitioner, also fails to indicate that petitioners elected to forgo the carryback period. Petitioner however contends that he filed a letter with both his 1984 and 1985 returns stating his desire to carry forward the NOL's incurred in those years. The letters are simply requests for the necessary forms. Even assuming that the purported letters were filed with the 1984 and 1985 returns, such letters do not constitute an effective election under section 172(b)(3)(C). Petitioner does not make an unequivocal election in the letters to carry forward the NOL's. Rather he expresses a mere desire to obtain the forms whereby such an election may be made. We do not regard the purported letters as a valid election. At the very least, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept the benefits and burdens of the statute. See Young v. Commissioner, 83 T.C. 831, 839 (1984), *217 affd. 783 F.2d 1201 (5th Cir. 1986); Menaged v. Commissioner, T.C. Memo. 1991-79. Petitioners have not meet their burden of proving that they are entitled to NOL's for the year in issue. We reject petitioner's NOL calculations since it is evident that such calculations fail to fully take into account the modifications called for in section 172(d) in computing the relevant net operating losses and net operating loss deductions for years prior to 1988. See sec. 172(c) and (d). On this record, we conclude that petitioner is not entitled to a net operating loss deduction in 1988 with respect to his tax liabilities for that year. Respondent is sustained. In his petition petitioner claims that respondent applied a rate of interest greater than the statutory amount to the determined deficiency. Generally, this Court does not have jurisdiction over interest. LTV Corp. v. Commissioner, 64 T.C. 589 (1975); Mazur v. Commissioner, T.C. Memo. 1992-308. There are exceptions to this rule, but none of the exceptions apply here. We therefore do not have jurisdiction to *218 redetermine the amount of interest which has been determined on petitioner's tax liability. Decision will be entered for respondent.